**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GURPREET SINGH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | 3:26-cv-01993 |
| v. | ) | |
| | ) | |
| WARDEN, Moshannon Valley Processing Center, et al., | ) | |
| | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

## I. Background

Pending before the Court is Petitioner Gurpreet Singh's Petition for Writ of Habeas Corpus. (ECF No. 1). Petitioner, a citizen of India, is currently being detained at Moshannon Valley Processing Center. (ECF No. 1, at 3). Petitioner entered the United States on or about March 30, 2018, at the southern border where Petitioner was encountered by border agents. *Id.* at 5. On or about May 10, 2018, Petitioner was released into the United States on bond by an immigration judge ("IJ"). Petitioner filed for asylum on October 2, 2018, and the application is still pending. *Id.* at 6. On September 24, 2026, Petitioner was encountered by Clearview Police Department officers near Wheeling, West Virginia, who were operating with agents from Immigration and Customs Enforcement ("ICE"). *Id.* Respondents aver that Petitioner admitted to being unlawfully present in the United States and that ICE agents conducted a warrantless arrest pursuant to 8 U.S.C. § 1357 after determining that there was a risk Petitioner would flee before they could obtain a warrant. (ECF No. 6, at 1).

Petitioner was transferred to Moshannon Valley Processing Center, where he remains detained. The parties agree that Petitioner requested bond on October 3, 2026, and that a bond

hearing was held before an IJ on October 6, 2026. (ECF Nos. 1, at 7; 6, at 1–2). In addition to agreeing that the bond hearing took place, the parties agree that the hearing was not recorded in full but disagree as to the extent of the audio issues; Petitioner claims that only Petitioner's counsel can be heard in the recording, but Respondents claim that counsel for DHS can also be heard. Both parties agree, however, that the IJ cannot be heard in the recording.

The Petition makes several claims: (1) that Petitioner's warrantless arrest violated 8 U.S.C. §§ 1226(a) and 1357(a)(2) and their attendant regulations and due process; (2) that the October 2026 bond hearing was fundamentally unfair; and (3) that defects with the recording and transcription of the October 2026 bond hearing require a new bond hearing. The Petition seeks release or, in the alternative, a second bond hearing before a different IJ with the burden of proof allocated to the Government by clear and convincing evidence. For the following reasons, the Court will GRANT the Petition in part and order Respondents to provide Petitioner with a new bond hearing before a neutral immigration judge, accompanied by a full and reviewable record.

## II. Discussion

### A. Petitioner's Arrest

Petitioner first argues that his initial arrest violated the warrant requirement of § 1226(a) and that § 1357(a)(2), which excuses the warrant requirement if the arrestee is "likely to escape before a warrant can be obtained for his arrest," does not apply. (ECF No. 1, at 19). Respondents concede that, while Petitioner is detained pursuant to § 1226(a), he was arrested without a warrant but respond that (1) this Court lacks jurisdiction to review the circumstances surrounding Petitioner's arrest and (2) the § 1357(a)(2) exception to the warrant requirement applies.

In support of their jurisdictional argument, Respondents cite 8 U.S.C. § 1252(g), which limits district courts' jurisdiction to "hear any cause or claim by or on behalf of any alien arising

from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." However, § 1252(g) "does not apply to every claim that may 'arise from' the Attorney General's commencement, adjudication, or execution of removal orders against a noncitizen; rather, § 1252(g) applies 'just [to] those three specific actions themselves.'" *Quispe v. Rose*, 819 F. Supp. 3d 362, 368 (M.D. Pa. 2025) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)).

Respondents further cite to *Khalil v. President*, *United States*, which explains the circumstances in which 8 U.S.C. § 1252(b)(9) limits habeas claims for noncitizens challenging their removal. 164 F.4th 259 (3d Cir. 2026). Respondents argue that Petitioner's unlawful arrest claim is not a "now-or-never question" relating to immigration detention which may be the subject of a habeas petition in district court. *Id.* at 276. Such claims, Respondents argue, can be raised before an immigration judge, appealed to the Board of Immigration Appeals ("BIA"), and, through a petition for review, heard by the court of appeals. The unlawful arrest claims are therefore "questions of law and fact, . . . arising from any action taken . . . to remove an alien from the United States" that may not be advanced in a district court habeas proceeding. 8 U.S.C. § 1252(b)(9).

At least in the scenario presented here, an unlawful arrest may give rise to "now-or-never harms," but it is not necessarily a "now-or-never question" that can only be raised through habeas, despite being "an injury that cannot be remedied later." *Khalil, 164 F.4th at 275–76*. At least one other member of this Court has held that in the circumstances then before that Court that review of unlawful arrests "through a habeas petition is clearly prohibited by *Khalil* because [the arrests] arise from or are actions taken to remove an alien from the United States." *Sissoko v. Oddo*, No. 3:26-cv-1081, 2026 WL 2349398, at *2 (W.D. Pa. Aug. 13, 2026).

More to the point here, even if the Court had jurisdiction to hear Petitioner's unlawful arrest claim, it is not clear that it could order the relief requested. *See id.* at *3 ("The remedy for an unlawful arrest is the suppression of evidence obtained therefrom, not release from custody."); *see also I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984) ("The 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest."). We also know that claims of unlawful arrest may be advanced by noncitizens through the petition for review process and are therefore channeled to that process through § 1252(b)(9). *See, e.g.*, *Matos v. Att'y Gen. United States*, 757 F. App'x 214, 216 (3d Cir. 2018) (non-precedential) (analyzing warrantless ICE arrest and Fourth Amendment claim on petition for review); *Oliva-Ramos v. Att'y Gen. of the United States*, 694 F.3d 259, 274 (3d Cir. 2012) (reviewing Fourth Amendment claim on petition for review).

Given these principles, and the relief ordered below, Court therefore concludes it should not and need not address more broadly the Petitioner's habeas claims that his allegedly unlawful arrest justifies release.

**B. Petitioner's October 6, 2026, Bond Hearing**

Petitioner's next claim is that the bond hearing held on October 6, 2026, was constitutionally inadequate and violated due process. He alleges both that the burden at the bond hearing was inappropriately allocated to Petitioner and that the IJ's stated justifications for his continued detention were "categorical, conjectural, or insufficiently tied to likely nonappearance." (ECF No. 1, at 13–14). As a separate claim that is intertwined with these allegations, Petitioner claims that the October 6, 2026, bond hearing was not fully and accurately recorded or transcribed, which Petitioner contends is an independent basis for the Court to conclude that a due process violation occurred and order a new bond hearing. *Id.* at 16–17.

Respondents contend that (1) the Court lacks jurisdiction to review the adequacy of a bond hearing that was not ordered by this Court, in part because Petitioner received the process due under 8 U.S.C. § 1226(a); (2) the bond hearing Petitioner received was not fundamentally unfair; and (3) the issues with the audio recording should be remedied by appeal to the BIA.

**1. Jurisdiction**

Respondents contend that, because Petitioner received a bond hearing as required by § 1226(a), the Court cannot review whether the bond hearing that took place met statutory and constitutional requirements. (ECF No. 6, at 9). They argue that, if the Court concludes that Petitioner is detained under § 1226(a) and he has received a bond hearing, he cannot be "in custody in violation of the laws or treaties of the United States" as required to grant a writ under 28 U.S.C. § 2241. Respondents note that Petitioner was issued an arrest warrant and custody determination form on which he was informed of his right to appeal ICE's detention decision to an IJ at a bond hearing and that, after exercising that right, he was denied bond by an IJ. (ECF No. 6, at 6). Respondents argue that, because the procedures outlined in § 1226(a) and its attendant regulations formally took place, the Court is prohibited from inquiring into whether the process provided complied with constitutional requirements.

But the Respondents' argument cuts too broadly, both here and if carried to its next logical steps. If this argument were to carry the day, "sham" hearings would defeat habeas jurisdiction, permitting Respondents to avoid compliance with § 1226(a) by performing "hearings" in which the outcome was an unreviewable fait accompli. *See Zheng v. Rokosky*, 826 F. Supp. 3d 545, 553 (D.N.J. 2026). Respondents focus on the forms ICE and DHS completed, not on the content of those forms or the process behind them. But due process requires more than a paper record that a hearing occurred: "[t]he fundamental requirement of due process is the opportunity to be heard 'at

a meaningful time and *in a meaningful manner*.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)) (emphasis added). The existence of a paper record does not, on its own, imply that Petitioner is not entitled to habeas relief.

Respondents further attempt to distinguish the present situation from the myriad of instances in which courts nationwide have reviewed the constitutional adequacy of bond hearings by arguing that district courts lack jurisdiction to review immigration bond hearings except those that the courts have themselves ordered, in which case the courts' authority is derived from the inherent authority to enforce their orders. (ECF No. 6, at 9). Respondents correctly point out that the Court may not review the discretionary determinations made by an IJ, but incorrectly prioritize the posture of Third Circuit cases over their holdings. Respondents state that, to the extent the Third Circuit has approved district court review of the fundamental fairness of immigration bond hearings, it has only done so in the context of court-ordered bond hearings. (ECF No. 6, at 10 (citing *Quinteros v. Warden Pike Cnty. Corr. Facility*, 784 F. App'x 75, 78 (3d Cir. 2019); *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624 (3d Cir. Feb. 25, 2022))).

The *Quinteros* court, however, concluded that the district court "had jurisdiction to determine whether [the petitioner] was 'in custody in violation of the Constitution or laws . . . of the United States' under 28 U.S.C. § 2241" and made no mention of the court's inherent power. 784 F. App'x at 77 (quoting 28 U.S.C. § 2241). The *Quinteros* court then proceeded to review the constitutional due process issues relevant to the petitioner's bond hearing under the same § 2241 authority applicable to the case before this Court. In *Ghanem*, the court reviewed the district court's denial of a motion to enforce its order directing a bond hearing for abuse of discretion when evaluating the fundamental fairness of the bond hearing, but the court made no indication that the same evaluation could not occur over a bond hearing the district court did not order in the first

instance. Finally, the Third Circuit, while not ruling on the issue, explicitly left the door open to review of an immigration court bond hearing by a district court in *Borbot v. Warden Hudson Cnty. Corr. Facility*. 906 F.3d 274 (3d Cir. 2018) ("[Petitioner's] habeas petition seeks to compel a *second* bond hearing *despite alleging no constitutional defect in the one he received*.") (second emphasis added). In describing why the petitioner's claim should be denied, the *Borbot* court indicated that a constitutional defect in the initial hearing could be a basis for a habeas claim. *Id.*

In the Court's judgment, the application of these principles in conformity with the due process commands of the Constitution demonstrates that if a petitioner did not receive a constitutionally-compliant bond hearing and remained detained thereafter, the question before the habeas court remains where it began — is the then-current custody of a petitioner contrary to rights guaranteed by the Constitution? If such a claim is presented, this Court is open for the petitioner to seek relief from that unconstitutional detention, without regard to who ordered the bond hearing to occur. Therefore, the Court concludes that it has jurisdiction under 28 U.S.C. § 2241 to hear Petitioner's habeas claim as it relates to procedural due process and the fundamental fairness of the October 6, 2026, bond hearing before an IJ.

**2. Constitutional Adequacy**

Federal courts "lack jurisdiction to review any discretionary determinations underlying the [IJ's] bond decision," and may only "review whether the bond hearing was fundamentally unfair" such that it violates the detainee's due process rights. *Ghanem*, 2022 WL 574624, at *2 (citing *Sylvain v. Att'y Gen. of U.S.*, 714 F.3d 150, 155 (3d Cir. 2013)). At an immigration bond hearing, "[a]n alien: (1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his [or her] interests." *Abdulai v. Ashcroft*, 239

F.3d 542, 549 (3d Cir. 2001) (cleaned up). In the present matter, the Court reviews the IJ's decision pursuant only to those three elements, and the third element in particular.

Petitioner first claims that the burden to prove he was not a danger to the community or risk of flight at the bond hearing was inappropriately allocated to him, and that Respondents should instead bear that burden. (ECF No. 1, at 13). Petitioner acknowledges, however, that this is only the case when civil detention becomes "prolonged." *Id.* (citing *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 213–14 (3d Cir. 2020); *Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 224 & n.12 (3d Cir. 2018)). Petitioner has been detained for approximately six weeks, far shorter than the two-and-a-half-year detention at issue in *German Santos* and even the six-month detention at issue in *Guerrero-Sanchez*. In *Borbot*, the Third Circuit declined to order a new bond hearing with burden shifting based solely on length of detention for a § 1226(a) detainee who was detained for fourteen months. 906 F.3d at 280. Accordingly, while the Third Circuit in *Borbot* "did not impose an absolute bar to a second bond hearing in every [§] 1226(a) case," *Fadel v. Warden of Moshannon Valley Ice Processing Ctr.*, No. 3:26-CV-00625, 2026 WL 1649901, at *2 (W.D. Pa. June 8, 2026), the Court will not conclude that the length of Petitioner's detention has become unreasonable or that the burden of the October 6, 2026, bond hearing was inappropriately allocated to Petitioner in these circumstances and will not order a new bond hearing on that basis.

Petitioner next argues that, at the bond hearing, the IJ declined to grant Petitioner bond based on a finding that he is a flight risk, but that the basis for such a finding was "categorical, conjectural, or insufficiently tied to likely nonappearance." (ECF No. 1, at 14). Respondents counter that the IJ's determination was individualized and is in any event not subject to review.

(ECF No. 6, at 16). In determining whether an immigration bond hearing is individualized, the Court, without reviewing the discretionary determinations of the IJ, evaluates:

> (1) whether the decision of the immigration judge paid full fidelity to the law of the case; (2) whether there has been no plain legal error by the immigration judge in identifying and applying the controlling legal precepts; and (3) whether the exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process.

*A.S.G. v. Oddo*, No. 3:26-CV-01043, 2026 WL 3117712, at *2 (W.D. Pa. Oct. 13, 2026) (citing *Serrano-Vargas v. Lowe*, 2019 WL 3003382 (M.D. Pa. July 10, 2019)) (internal quotation marks omitted).

Respondents confusingly state that "the [bond] hearing was recorded in its entirety" but that "portions of the recording contain no audio." (ECF No. 6, at 14). The Court would note that as a matter of pure logic, someone may have engaged in the act of "recording," but because their efforts were ineffective, nothing was actually recorded. So those observations by Respondents may be literally accurate and literally unhelpful all at the same time. The audio from the bond hearing provided by Respondents is an approximately fifteen-minute audio file that clearly contains the audio from Petitioner's counsel and appears to contain at least most audio from counsel for DHS, although it is unintelligible at times due to recording quality. Audio from the IJ's voice is not present in the recording and there are large sections of silence in the recording, presumably from when the IJ is speaking.

The Court is materially impeded from evaluating whether the hearing was individualized because there is not a full and accurate record of the bond proceeding. This Court has concluded in other instances that conclusory statements that are not tied to the final decision of an IJ can render the denial of bond sufficiently arbitrary such that it violates due process. *See A.S.G.*, 2026

WL 3117712, at *3. Petitioner makes similar allegations here, and Respondents do not deny them. Absent a record, the Court is unable to reach a conclusion, which illustrates precisely why a record is vital. Against this, Respondents only assert that "any deficiency in the IJ's reasoning is not subject to review." (ECF No. 6, at 16). While that is true when the IJ's reasoning is within the scope of discretion afforded by statute, such discretion is not limitless. The Court is not required to defer to an IJ who acts "as a 'mere rubber-stamp' for Respondents' predetermined decision to deny bond." See *Zheng*, 826 F. Supp. 3d at 555 (quoting *Abdulai*, 239 F.3d at 550).

The Court is not implying the IJ in this case acted in such a manner, only that the Court cannot make a determination one way or the other without a record that includes anything from the IJ beyond his final decision to deny bond; there is no record of the findings of fact or conclusions of law made by the IJ (either what they were or if they were even made), nor any statement from the IJ at all beyond the written statement in the final order that "[bond is d]enied, because flight risk." (ECF No. 6-7).

Respondents further contend that Petitioner should be required to appeal the result of the bond hearing to the BIA, which can remand to the IJ if the BIA determines there is an insufficient record from which to review the results of the bond hearing. They also state that, if Petitioner appeals the results of the bond hearing to the BIA, the IJ will then be required to produce a memorandum explaining his reasoning, which the BIA can use to assist in their review of the bond hearing.

The Third Circuit ruled on precisely these arguments in the context of *Joseph* hearings performed for people detained pursuant to 8 U.S.C. § 1226(c) in *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321 (3d Cir. 2021). In *Gayle*, the Government argued that *Joseph* hearings before an IJ did not need to be recorded or transcribed to comply with due process because the

BIA could review documents and legal issues *de novo*. 12 F.4th at 334. The Third Circuit rejected an argument identical to the one put forth by Respondents here: that "[i]n the event a detainee appeals to the BIA, the IJ will then prepare a written memorandum which might be based on the IJ's notes and any relevant audio recordings" for use before the BIA proceeding. *Id.* at 334–35 (cleaned up). The *Gayle* court noted, however, that "in the absence of any requirement to create such notes or recordings, the memo might be based on nothing more than an IJ's best recollection — after the fact and amid innumerable other hearings over which she presided. Either way, such post-hoc reconstruction of the events will never be 'the functional equivalent of a transcript.'" *Id.* (quoting *Singh v. Holder, 638 F.3d 1196*, 1200, 1208 (9th Cir. 2011)).

After performing *Mathews* balancing, the *Gayle* court concluded that "[g]iven the substantial individual interest in liberty, the relatively high value of additional safeguards, and the minimal burden on the Government," due process requires the Government to make a record of "sufficient completeness" for "adequate and effective . . . appellate review" of *Joseph* hearings. *Id.* (quoting *Mayer v. City of Chicago*, 404 U.S. 189, 194 (1971)) (quotation marks omitted) (ellipsis in original). The *Gayle* court left the choice of the record's form to the Government, whether an audio recording, transcription, or other complete record, but was clear in the mandate that such a record be complete and contemporaneous with the hearing. *Id.* at 336.

The principles identified in *Gayle* that mandate the creation of a contemporaneous record in § 1226(c) *Joseph* hearings are equally present in bond hearings held for § 1226(a) detainees. After all, "[m]isconduct or mistakes made by IJs are often identifiable only through audio recordings or transcripts of the proceedings." *Gayle*, 12 F.4th at 334 (citing *Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 221 (3d Cir. 2017)). While the Court has no indication that misconduct occurred in this instance, the lack of a record precludes the Court from determining that it has not,

and from determining whether the processes applied by the IJ conformed to the requirements of Due Process, no matter how constrained this Court's review of those proceedings. And the *Gayle* court favorably cited the Ninth Circuit's reasoning in *Singh v. Holder*, which squarely addressed hearings performed for § 1226(a) detainees. *Id.* A "post hoc memorandum is inadequate, and [ ] the absence of a contemporaneous record deprive[s Petitioner] of due process." *Singh*, 638 F.3d at 1208.

The Court does not adopt Respondents' argument that Petitioner should be required to appeal to the BIA from an inadequate record and hope that the BIA will remand the action back to the immigration judge to create a record the court of appeals has already stated is required by due process. The deficient record necessarily prevents the Court from concluding that the October 6, 2026, bond hearing met the requirements imposed by due process. As noted above, a constitutionally adequate bond hearing requires (1) factfinding based on a record before a neutral decisionmaker, (2) the ability for Petitioner to make arguments on his behalf, and (3) an individualized determination of his interests. *Ghanem*, 2022 WL 574624, at *2. It is not enough for Respondents to assert that those steps probably occurred. With the decisionmaker inaudible and a one-sentence order generated by that hearing, there is no basis for the Court to find that the second and third requirements were met; there is no record of what the IJ's factfinding was based on or that his determination was individualized.

The Court therefore concludes that the October 6, 2026, bond hearing did not satisfy the requirements of due process and will order a new bond hearing, *de novo*, before a different neutral IJ. Because Petitioner has not been detained for a prolonged length of time, the Court will not order a burden-shifted bond hearing.

## III. Conclusion

For the foregoing reasons, the Court thus GRANTS IN PART AND DENIES IN PART the Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1). It is GRANTED in that within seven (7) days of the date of this Order, Respondents are ORDERED to provide the Petitioner with a constitutionally compliant bond hearing, *de novo* and before a different immigration judge, unless Petitioner requests an extension. Within seven (7) days of holding that bond hearing, the Court ORDERS Respondents to file a Notice to the Court of the outcome of that hearing along with a complete record of the hearing. If Petitioner is released as a result of the aforementioned individualized bond hearing or otherwise, Respondents are further ORDERED to return to Petitioner any and all funds or property which may have been seized from him at the time of his arrest or which is otherwise in their custody. All other requests in the petition are DENIED WITHOUT PREJUDICE to the extent Petitioner seeks any additional relief at this time.

The Clerk will close the case on the docket without prejudice, and the Court retains jurisdiction over the action and the parties pending further proceedings, as may be appropriate, including interpretation or enforcement of its Orders.

/s/ Mark R. Hornak
Mark R. Hornak
UNITED STATES DISTRICT JUDGE

Dated: November 6, 2026